UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No.  4:09CV0234 HEA ) |
| FINE HOME MANAGERS, INC., et al., | ) ) |
| Defendant. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on defendant The Cincinnati Insurance Company's  (hereafter "CIC") Motion for Summary Judgment [Doc.  39].  The defendants, Bill and Carol Adcock (hereafter "Adcocks") and Fine Home Mangagers Inc.  (hereafter "FHM), have filed a written opposition to this motion [Docs.  43 and 45] with supporting excerpts from various depositions.  The plaintiff thereafter filed a reply to these responses [Docs.  49 and 50].  For the reasons set forth below, the Motion is granted.

**Background**[1]

On or about October 2, 2008, the Adcocks filed a lawsuit against defendant FHM.  The lawsuit is currently pending in the Circuit Court of St.  Louis County,

---

[1]The Court's recitation of the facts is drawn form the parties' statements of material facts filed in conjunction with CIC's motion for summary judgment listed above.

Missouri.[2] CIC alleges that the dispute in the underlying lawsuit arose out of FHM's contracting to clean the home and personal property of the Adcocks. Defendant FHM does not contest this statement. The Adcocks contend that the underlying lawsuit arose as a result of the chemicals FHM's subcontractor mistakenly allowed to come into contact with the Adcocks' personal property while she was cleaning their home.  CIC issued an insurance policy to FHM, which was in effect from March 1, 2006 to March 1, 2009. The Petition in the underlying lawsuit includes counts for Negligence, Breach of Contract and Res Ipsa Loquitor.

### *Summary Judgment Standard*

The standard for summary judgment is well settled.  In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005); *Littrell v. City of Kansas City, Mo.,* 459 F.3d 918, 921 (8th Cir. 2006).  The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

---

[2]The cause number for the St.  Louis County case is 08SL-CC04153.

*Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Littrell*, 459 F.3d at 921. "The party opposing summary judgment may not rest on the allegations in its pleadings; it must 'set forth specific facts showing that there is a genuine issue for trial.'" *United of Omaha Life Ins. Co. v. Honea,* 458 F.3d 788, 791 (8th Cir.2006) (quoting Fed.R.Civ.P. 56(e)); "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at 248; *Woods,* 409 F.3d at 990.

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). A plaintiff may not merely point to unsupported self-serving allegations, but must

substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor. *Wilson v. Int'l Bus. Mach. Corp.,* 62 F.3d 237, 241 (8th Cir.1995). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung,* 422 F.3d 630, 638 (8th Cir. 2005). Summary Judgment will be granted when, viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Samuels v. Kansas City Mo. Sch. Dist.,* 437 F.3d 797, 801 (8th Cir. 2006). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin,* 483 F.3d 516, 526-7(8th Cir. 2007). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines,* 2008 WL 2609197, 3 (8th Cir. 2008).

## Discussion

### *The Existence of an "Occurrence"*

CIC alleges that none of the claims in the underlying lawsuit (Breach of Contract, Negligence, and Res Ipsa Loquitor) allege an "occurrence" under the CIC Policy and under applicable law.  Defendants FHM and the Adcocks contend that damage caused by FHM's cleaning service is covered because it is an "occurrence" of "property damage", which is a covered event under the Policy. CIC's standard form commercial general liability ("CGL") policy defines an "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [Policy, Pltf's Exh. 1C, at 29].  Under Missouri law, an "accident" is defined as "[a]n event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event.  Hence, often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; . . ." *Columbia Mut. Ins. Co. v. Epstein,* 239 S.W.3d 667, 672 (Mo.App.E.D.2007) *quoting West v. Jacobs*, 790 S.W.2d 475, 477 (Mo.App.W.D.1990).

The purpose of CGL policies like the one at issue is to protect against the unpredictable and potentially unlimited liability that can result from accidentally causing injury to other persons or their property. *Columbia Mut. Ins.Co. v. Schauf*, 967 S.W.2d 74, 78 (Mo. banc 1998).  A CGL such as this is not intended to protect business owners against every risk of operating a business. *Id.*  Generally, this type

5

of policy does not contemplate coverage for losses which are a normal, frequent or predictable consequence of the business operations. *American States Ins. Co. v. Mathis,* 974 S.W.2d 647, 649 (Mo.App.E.D.1998).

Under the definitions discussed supra, a breach of contract is not an "accident" and "occurrence". *Id.* at 650; *West v. Jacobs,* 790 S.W.2d 475, 478 (Mo.App.1990).  This is due to the fact that performance of the contract according to its specified terms was "within the insured contractor's control and management and its failure to perform cannot be described as an undersigned or unexpected event." *Koch Engineering Co. v. Gibraltoar Cas. Co.,* 878 F.Supp. 1286 , 1288-1289 (E.D.Mo.1995).  In the underlying case, the purported cause of the Adcocks' loss was due to FHM's negligent cleaning of the Adcock's home furnishings.  A breach of a contractual duty of this sort does not constitute an "accident." FHM's performance of the contract according to the terms specified was within its control and management.  The failure to perform–i.e. damage to the Adcocks' objects–does not constitute an undesigned or unforseen event. *See Columbia Mut. Ins. Co. v. Epstein,* 239 S.W.3d 667, 672 (Mo.App.E.D.2007) *quoting West v. Jacobs*, 790 S.W.2d 475, 477 (Mo.App.W.D.1990).  As such, no "occurrence" or "accident" actually occurred pursuant to the clear language of the CGL Policy.

### *Care, Custody or Control Exclusion*

Furthermore, assuming *in arguendo* that an "occurrence" or "accident" did occur, the Policy's "care, custody or control" exclusion precludes coverage. Under the policy, the exclusion states that no coverage exists for "[p]roperty damage to: . . . [p]ersonal property in the care custody or control of an insured..." Generally, "the insurer has the burden of proving that an insurance policy exclusion applies." *Am. Econ. v. Jackson,* 476 F.3d 620, 623 (8th Cir.2007); *Am. Fam. v. Co Fat Lee,* 439 F.3d 436, 439 (8th Cir.2006). While FHM fails to specifically address this exclusion, the Adcocks argue that the exclusion does not apply because (a) FHM wasn't at the Adcocks' home–only its subcontractor was–and the policy states that the "care, custody, control" exception does not apply to actions of subcontractors; and (b) the damage actually occurred after the Adcocks' personal property was out of any control of FHM's subcontractor's might have had, when the chemicals left on the furnishings later damaged them.

As CIC points out, the clear language of the Policy specifically states that exclusion applies if the property is in damaged in the care, custody or control of *any* insured. (Emphasis added). Ms. Ratliff–the individual in question who was responsible for cleaning the Adcocks' home–is an employee of FHM under the CGL policy. Pursuant to Missouri case law and the Workers' Compensation Act, "employee", as used in liability insurance policies such as this, is defined as "every

person in the service of any employer ... under any contract of hire, express or implied, oral or written, or under any appointment or election, including executive officers of corporations." § 287.020.1.RSMo (2004). *See also Auto Owners Mut. Ins. Co. v. Wieners*, 791 S.W.2d 751, 756 (Mo.App. S.D. 1990) (held that § 287.020.1. embodies the essential elements of the definition of "employee"). As such, the Court finds that regardless of whether Ms. Ratliff was a subcontractor or direct employee of FHM, she was an employee as defined by Missouri law. Therefore, the Adcocks' attempt to avoid the implementation of the "care, custody or control" exclusion fails in this regard.

The Court also rejects defendants Adcocks' claim that the damage to the home furnishings did not happen in the care, custody or control of FHM at the time of the loss. The Adcocks contend that they did not deliver the damaged items as a bailment; Ratliff did not have control over the entirety of the objects; and she made no attempt to actually move the objects. To support this position, the Adcocks submit to the Court the *Kirchner v. Hartford Accident & Indemnity Co.* case in which the court held that a collapsed steel frame of a structure erected by a subcontractor was not in physical control of the subcontractor when the frame collapsed over a weekend when a the project was unattended. *Kirchner v. Hartford Accident & Indemnity Co.,* 440 S.W.2d 751, 755 (Mo.App.1979). The Court finds

8

the Missouri Court of Appeals opinion in *Opies Milk Haulers, Inc. v. Twin City Fire Ins. Co.,* 755 S.W.2d 300 (Mo.App.1998) is more on point with the present case. In *Opies,* the insured negligently cleaned a bulk liquid tanker after transporting liquid egg whites and then scheduled it to carry a load of liquid fructose. Once the fructose shipment reached its desired destination, contamination from the egg white was discovered and Opies was sued. Quoting *Kirchner*, the court held that "the occurrence covered by the liability policy took place at the time the fructose was loaded into the [contaminated] tanker." 755 S.W. 2d at 303. Specifically applicable here, the *Opies* court found that the damage at issue occurred when the fructose was loaded into a the tanker, and–when loaded into the tanker–the fructose was in the care, custody or control of the insured. *Id. See also Michigan Millers Mut. Ins. Co. v. DG&G Co., Inc.,* 569 F.3d 807 (C.A.8 Mo., 2009).

    Just as the damage occurred when the fructose was loaded into the tanker in *Opies*, the damage in the present case happened when Ms. Ratliff applied the cleaning chemicals to the Adcocks' furnishings. As discussed supra, Ratliff was an employee of the insured FHM at the time she performed her cleaning duties. As such, Ratliff exercised care, custody or control over the damaged objects at issue, and the objects were damaged when she exercised such control. Therefore, in light

9

of these facts, the "care, custody or control" exclusion of the CGL policy is applicable here and precludes coverage.

### *CGL Policy Ambiguity*

On a final note, FHM argues that the Policy in question is ambiguous. Generally, any ambiguity in the policy must be construed against an insurer. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo.1993). If, however, a policy is unambiguous, it will be enforced as written absent a statue or public policy requiring coverage. *Id.*; *Rodriguez v. General Accident Ins. Co.*, 808 S.W.2d 413 (Mo. App.1981). FHM contends that the terms "occurrence" and "property damage" are ambiguous, in that they cannot be readily applied to a business such as FHM's without considering surrounding circumstances. The Court is unpersuaded by FHM's ambiguity claim regarding these terms and has offered its opinion regarding such above.

Further, FHM contends that the "products-completed operations hazard" is ambiguous in that the coverage provided under this clause is separate from the coverage under the Policy. Generally, a "products-completed operations hazard" clause describes "a coverage within the CGL for the same types of injuries or damages covered by the rest of the CGL policy, but for a different period of time or location. *Hawkeye-Security Ins. Co. v. Davis*, 6 S.W.3d 419, 425 (Mo.App.S.D.,

1999) (Emphasis withheld.)  This is not a separate coverage, it is a sub part of the whole policy.  *Essex Ins. Co. v.  Hampton,* 2007 WL 2083669 *6 (E.D.Mo.  2007).  The Court finds that this portion of the Policy–and the entire Policy–is unambiguous and will be enforced as written.  As such, FHM and the Adcocks' contention that the policy is ambiguous fails.

## Conclusion

The Court concludes that no "occurrence" was alleged in the underlying lawsuit;  the "care, custody or control" exclusion contained in the CGL precludes liability coverage altogether; and defendants Adcocks and FHM's ambiguity claim fails.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Cincinnati Insurance Company's Motion for Summary Judgment [Doc.  39] is GRANTED.

Dated this 28th day of October, 2011.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE